IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SIERRA 76, INC., | ) | CASE NO. 1:11 CV 1264 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| TA OPERATING LLC, | ) | |
| | ) | |
| Defendants. | ) | <u>MEMORANDUM OPINION</u> |

This matter is before the Court on Defendants' Motion for Summary Judgment, and on Plaintiff'S Cross Motion for Equitable Relief. (ECF #15, 17). Plaintiff, Sierra 76, Inc. ("Sierra") and Defendant, TA Operating LLC ("TA Operating"), had a lease agreement with a renewal option that required notice of intent to renew by a certain date. Sierra failed to provide notice of its intent to renew before the deadline, but did so after the deadline had passed, and before any other lease agreement had been negotiated by TA Operating. Subsequently, Defendant made arrangements to lease the property to a different entity. Sierra is before the Court seeking equitable relief from the literal enforcement of the lease language. Defendant argues that equitable relief is neither available nor appropriate under the circumstances. For the reasons set forth below, this Court hereby denies Defendant's Motion for Summary Judgment, and denies

Plaintiff's cross motion for summary judgment on their request for equitable relief.

## Facts

There is no dispute that the lease agreement between the parties required Sierra to notify TA Operating, in writing, fifteen months prior to the expiration of the lease, if it intended to exercise its renewal option. Under the terms of the lease, notification of intent to renew was due November 1, 2010. Sierra missed that deadline, and instead provided notice of its intent to renew on February 3, 2011. Sierra's President and CEO testified that the failure to timely provide written notice of intent to renew was caused by a computer corruption issue that eliminated that renewal reminder from her computerized calendar, and that she did not independently remember the deadline. TA Operating contacted another potential tenant, Cashell Enterprises, Inc. ("Cashell") in February of 2011. TA Operating and Cashell had a prior contractual agreement that requires TA to offer and undertake to negotiate in good faith (for up to thirty (30) days) to permit Cashell to operate in a travel center prior to extending or renewing any existing agreement it has with any gaming operation in such travel center. In May of 2011 TA Operating entered into a lease with Cashell. That lease is conditional, depending on the outcome of this litigation.

The lease between Sierra and TA Operating specifically states that it "shall be construed in accordance with and governed by the laws of the State of Ohio, Cuyahoga County." (ECF #15, Ex. 2 at 20).

**Summary Judgment Standard**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most

civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.

-4-

> Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## **Analysis**

This case is before the Court under its diversity jurisdiction. When exercising diversity

jurisdiction, Federal Courts are bound to apply Ohio law in accordance with the currently controlling decisions of the Ohio Supreme Court. *See Ziegler v. IBP Hog Market, Inc*., 249 F.3d 509, 517 (6th Cir. 2001). If there is no controlling Ohio Supreme Court case law on an issue, Federal Courts may look to Ohio's lower courts. *See, Ventura v. The Cincinnati Enquirer*, 396 F.3d 784, 792 (6th Cir. 2005). Decisions from intermediate state appellate courts are viewed as persuasive unless it can be demonstrated that the Ohio Supreme Court would decide the matter differently. *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). The parties agree that the Supreme Court of Ohio has not issued any decision that is directly on point with the facts and circumstances of this case, and that a review of the decisions of Ohio's appellate courts is appropriate in this case.

Although the Ohio Supreme Court has held that the clear and unambiguous language of a contract cannot be altered through the application of equitable principles, these holdings arose in the context of unjust enrichment or *quantum meruit* claims where one party sought to recover more than it had previously bargained for during the contract negotiations. *See generally, Dugan v. Meyers Constr. Co., Inc. V. Ohio Dept. Of Admin. Servs*., 113 Ohio St.3d 226, ¶ 29 (2007); *Ervin v. Garner*, 25 Ohio St.2d 231, 239-240 (1971); *Ullmann v. May*, 147 Ohio St. 468, 476 (1947). Unlike the aforementioned cases, the Plaintiff in this case is not seeking to change the financial value or substance of the contract. Rather Sierra 76 is seeking to obtain an equitable extension on an administrative or procedural requirement relating to the timing of her lease renewal. The Ohio Supreme Court has never applied the general prohibition against equitable intervention to a case involving a commercial tenant's failure to timely exercise a renewal option on a lease.

Defendant also cites the Ohio Supreme Court case of *Joseph J. Freed v. Cassinelli*, 23 Ohio St.3d 94 (1986) for the contention that Ohio courts are bound to enforce lease provisions expressly

-6-

authorizing forfeiture of a commercial premises when sophisticated parties enter into the agreement from equal bargaining positions. Although the Supreme Court of Ohio did enforce the forfeiture provision in that case, it is not at all clear that it did so without consideration of equitable principles. While both the Court of Appeals and the Ohio Supreme Court cited the express language of the lease agreement, which provided for the remedy of forfeiture upon default, both also discussed and weighed the equities of the case when rendering their opinions. Therefore, this case does not provide support for the Defendant's contention that equitable considerations are never relevant when determining the appropriate remedy upon a contractual default.

Generally, in the absence of controlling case law from the Ohio Supreme Court, a federal court sitting in diversity would consider the appellate court cases throughout the state to determine what the state of the law in Ohio is on a particular issue. The Ohio appellate districts appear to be split on the question of whether equitable principles can be applied to excuse a lessee's late notification of its intent to renew a lease. *Compare, e.g.*, *KeyBank NA v. MRN Ltd. Partnership* (8th Dist. 2011), *with Fifth Third Bank W. Ohio v. Carroll Bldg. Co.*, 180 Ohio App.3d 490 (2nd Dist. 2009). In this case, however, Plaintiff contends that because the parties agreed in the lease to apply the law of Cuyahoga County, only case law from the Eighth District Court of Appeals should be considered when determining whether equitable relief should be granted. Defendant, on the other hand, argues that the case was brought under Ohio law and there is no distinction between Ohio law and the law of Cuyahoga County; therefore, case law from all appellate districts should be considered and evaluated when determining whether equitable relief is available to the Plaintiff under these circumstances.

Prior to May 1, 2002, published Court of Appeals opinions were considered to be controlling

-7-

authority in the district of the issuing court. Therefore, had this issue arisen prior to May of 2002, there would have been clear, controlling law, as set forth in *KeyBank* and *Vivi*, in Cuyahoga County, that differed somewhat from the law in other parts of the state with regard to the issue currently before this Court. Under the terms of the lease agreement, this Court would have been bound to apply *KeyBank* in order to satisfy the clear language of the choice of law provision in the contract. In May of 2002, however, the current Supreme Court rules for the Reporting of Opinions abolished the differentiation between binding or controlling opinions and gave equal weight to all court of opinions in all courts, regardless of the district. Rep. R. 4(A), (B). As a result of this change, there is no longer any differentiation between the controlling case law applicable in different counties or districts. Therefore, there is, in effect, no law of Cuyahoga County that differs from the general law of Ohio.

Nonetheless, for reasons unknown to this Court, in a corporate transaction, with equal bargaining parity, the parties in the instant case bargained for, agreed to, and included a choice of law provision that specified that the law of Ohio, Cuyahoga County would apply to all disputes and interpretation issues arising under their contract. To the extent possible, the Court is bound to give effect to the intent of the parties, as expressed in the language of the contract. *See, e.g., Sunoco, Inc. v. Toledo Edison Co.*, 129 Ohio St.3d 397, 404. The Ohio Supreme Court Rules for the Reporting of Opinions, Rep. R. 4, while no longer mandating that Court of Appeals decisions are controlling in their districts, did provide that Court of Appeals opinions may be "weighted as deemed appropriate by the courts." This gives the Court sufficient authority to exercise its discretion under the unique circumstances of this case, and assign greater weight to the Eighth District Court of Appeals decisions, in accordance with the apparent intent of the parties as articulated in the choice

of law provision.

Therefore, the Court finds that because the parties specifically contracted to apply the laws of "Ohio, Cuyahoga County" to any issues raised in connection with the enforcability of the contract, the Court, in order to give effect to the intent of the parties as articulated in the language of the contract, should weigh the decisions of the Eighth District more heavily than the opinions of other Districts and apply the case law of Cuyahoga County absent any clearly contradictory statements of law issued by the Ohio Supreme Court.[1] As the parties have agreed that there are no Ohio Supreme Court decisions directly on point with the facts and circumstances of this case, the Court will apply the standard articulated by the Eighth District Court of Appeals to determine if equitable relief should be granted in this case.

The Eighth District has clearly accepted that equitable relief may be awarded to excuse a lessees failure to timely exercise an option to renew a lease. The test for determining when such relief is warranted was set forth in *Vivi Retail, Inc. V. E&A Northeast LP*, 2008 WL 4263446 (Ohio App. 8th Dist), and re-affirmed in *KeyBank NA v. MRN Ltd. Partnership*, 193 Ohio App.3d 424, 952 N.E.2d 532 (8th Dist. 2011). Under these cases:

> Even though a lease may be clear and unambiguous, equitable relief may still be granted to relieve a lessee from the consequences of a failure to give notice at the time, or the form and manner, required as a condition precedent to renewal of the lease, where (1) such failure results from accident, fraud, surprise or honest mistake, and (2) has not prejudiced the lessor.

---

[1] This should in no way be construed as a decision by this Court that the opinions coming out of the Eighth District are more persuasive, better reasoned, or more in line with the general positions of the Ohio Supreme Court. However, in order to give effect to the specific and unusual choice of law provision that applies in this case, the Court feels compelled to look to the Eighth District case law to provide the standard to be applied under the specific circumstances of this case.

(citing *Ward v. Washington Distributors, Inc*., 67 Ohio App.2d 49, 53, 425 N.E.2d 420 (1980)).

In the instant case, Plaintiff claims that she missed the renewal deadline because her computer malfunctioned, somehow erasing the notification she programmed to remind her when her notice was due. Defendant argues that even if this were true, the failure to timely renew did not result from accident, fraud, surprise or honest mistake, but rather was the result of negligence or recklessness.

The issue of whether Plaintiff's failure to give notice constitutes accident, surprise or honest mistake (fraud is not alleged), is a question of fact that cannot be determined on summary judgment.

In addition, Defendant argues that Plaintiff's failure to provide timely notice triggered its contractual obligation to offer the lease to Cashell. Under a prior contract between TA Operating and Cashell, TA Operating was required to offer and undertake to negotiate in good faith (for up to thirty (30) days) to permit Cashell to operate in a travel center prior to extending or renewing any existing agreement it has with any gaming operation in such travel center. Defendant contends that Plaintiff's failure to timely renew the lease extinguished TA Operating's existing agreement to extend the lease, thereby triggering its obligation to Cashell. Therefore, according to Defendant it would be prejudiced if it were forced to give the lease extension to Plaintiff, because it would then be in breach of its contractual obligations to Cashell. Plaintiff argues that TA Operating did not even contact Cashell to inform them the lease was available until after Sierra 76 had already given notification (albeit late notification) of its intent to renew. Therefore, Plaintiff contends Defendant was not prejudiced by the delay. In addition, it is unclear from the language of the contractual obligation between TA Operating and Cashell, whether permitting late notice of an intent to exercise an already existing option to extend the lease would constitute an "extension or renewal" of the

existing agreement between TA Operating and Cashell. Therefore, the question of prejudice also remains as a material question of fact that precludes the issuance of summary judgment in this case.

## Conclusion

For the reasons set forth above, Defendant's motion for summary judgment and Plaintiff's Cross motion for summary judgment on their request for equitable relief are both denied. Trial is set for March 19, 2012 ; trial order to issue. IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: January 27, 2012